**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**


W.B., et al.,

        Plaintiffs,

v.

CIVIL ACTION NOS.: 5:18-cv-00100; 5:18-cv-00101; 5:18-cv-00102; 5:18-cv-00103; 5:18-cv-00104; 5:18-cv-00105; 5:18-cv-00106; 5:18-cv-00107; 5:18-cv-00108; 5:18-cv-00109; 5:18-cv-00110; 5:18-cv-00111; 5:18-cv-00112; 5:18-cv-00113; 5:18-cv-00114; 5:18-cv-00115; 5:18-cv-00116; 5:18-cv-00117; 5:18-cv-00118; 5:18-cv-00119; 5:18-cv-00120; 5:18-cv-00121; 5:18-cv-00122; 5:18-cv-00123; 5:18-cv-00124; 5:18-cv-00125; 5:18-cv-00126; 5:18-cv-00127; 5:18-cv-00128; 5:18-cv-00129; 5:18-cv-00130; 5:18-cv-00131; 5:18-cv-00132; 5:18-cv-00133; 5:18-cv-00134; 5:18-cv-00135; 5:18-cv-00136; 5:18-cv-00137; 5:18-cv-00138; 5:18-cv-00139; 5:18-cv-00142; 5:18-cv-00146; 5:18-cv-00148; 5:18-cv-00149; 5:18-cv-00150; 5:18-cv-00151; 5:18-cv-00152; 5:18-cv-00153; 5:18-cv-00154; 5:18-cv-00155; 5:18-cv-00156; 5:18-cv-00157; 5:18-cv-00158; 5:18-cv-00159; 5:18-cv-00160; 5:18-cv-00161; 5:18-cv-00162; 5:18-cv-00163; 5:18-cv-00164; 5:18-cv-00165; 5:18-cv-00166; 5:18-cv-00167; 5:18-cv-00168; 5:18-cv-00169; 5:18-cv-00170; 5:18-cv-00171; 5:18-cv-00172; 5:18-cv-00173; 5:18-cv-00174; 5:18-cv-00175; 5:18-cv-00176; 5:18-cv-00178; 5:18-cv-00179; 5:18-cv-00181; 5:18-cv-00182; 5:18-cv-00183; 5:18-cv-00184; 5:18-cv-00185; 5:18-cv-00186; 5:18-cv-00187; 5:18-cv-00188; 5:18-cv-00189; 5:18-cv-00190; 5:18-cv-00191; 5:18-cv-00197; 5:18-cv-00198; 5:18-cv-00199; 5:18-cv-00200; 5:18-cv-00201; 5:18-cv-00202; 5:18-cv-00203; 5:18-cv-00204; 5:18-cv-00205; 5:18-cv-00206; 5:18-cv-00207; 5:18-cv-00208; 5:18-cv-00209; 5:18-cv-00210; 5:18-cv-00211; 5:18-cv-00212; 5:18-cv-00213; 5:18-cv-00214; 5:18-cv-00215; 5:18-cv-00216; 5:18-cv-00217; 5:18-cv-00218; 5:18-cv-00219; 5:18-cv-00220; 5:18-cv-00221; 5:18-cv-00222; 5:18-cv-00223; 5:18-cv-00224; 5:18-cv-00225; 5:18-cv-00226; 5:18-cv-00227; 5:18-cv-00228; 5:18-cv-00229; 5:18-cv-00230; 5:18-cv-00231; 5:18-cv-00232; 5:18-cv-00233; 5:18-cv-00238; 5:18-cv-00255; 5:18-cv-00284; and 5:18-cv-00285


RALEIGH HEART CLINIC, INC., et al.,

        Defendants.


**MEMORANDUM OPINION AND ORDER**


The Court has reviewed the Plaintiffs' motions to remand filed in each of the above-listed cases, together with the responsive briefing, the complaints, the notices of removal, and all attached exhibits. For the reasons stated herein, the Court finds that the motions should be granted.

## FACTUAL ALLEGATIONS

This matter includes some 125 cases filed in the Circuit Court of Raleigh County, West Virginia, and removed to this Court. All of the cases involve similar core allegations, and the facts and legal standard relevant to removal and remand are the same for all cases. Each Plaintiff is represented by one of five primary groups of attorneys.[1] The Plaintiffs' attorneys have not pursued identical legal strategies, although it appears they have worked somewhat cooperatively, and so the complaints[2] and procedural histories of the cases are not identical. The Court will note differences in the allegations as relevant.

The Plaintiffs allege that they were patients at the Raleigh Heart Clinic, where they received cardiac stress test examinations from Dr. Thair Barghouthi. As part of the stress test, they were injected with Cardiolite or other radiopharmaceuticals supplied by Cardinal Health. Cardinal Health packaged, marketed, and distributed the radiopharmaceuticals used in the stress tests in large vials conducive to multi-dosing, rather than single-dose vials. Dr. Barghouthi and the Raleigh Heart Clinic administered the radiopharmaceuticals in a manner that permitted the spread of blood-borne pathogens. Each Plaintiff was subsequently diagnosed with Hepatitis B or Hepatitis C. In a letter dated March 11, 2016, the West Virginia Department of Health and Human Services (DHHR) notified Dr. Barghouthi's patients that it was investigating a link between the cardiac stress tests at Raleigh Health Clinic and cases of viral hepatitis.

---

1 Stephen New's law office, sometimes together with other attorneys, is counsel for 111 of the cases; Ben Salango's law office is counsel for six cases; Robert Berthold's law office is counsel for two cases; Scott Segal's law office, sometimes together with other attorneys, is counsel for four cases, and Marvin Masters' law office is counsel for one case.
2 Some of the complaints were amended in state court prior to removal. The Court has reviewed the operative pleadings in place at the time of removal, but has referred to all complaints and amended complaints as "complaints" collectively for convenience.

Each Plaintiff alleges negligence against Raleigh Heart Clinic and Dr. Barghouthi; negligence/gross negligence/reckless indifference/wanton disregard in design, manufacture, and distribution, strict product liability, and failure to warn against Cardinal Health. The Plaintiffs represented by Stephen New allege breach of duty and failure to perform mandatory acts against the DHHR, asserting that the DHHR failed to notify patients and the public of the Hepatitis outbreak or exposure in accordance with state regulations. Raleigh Heart Clinic is located in Beckley, West Virginia, and is a West Virginia citizen. Dr. Barghouthi is a West Virginia resident. Cardinal Health is a limited liability company organized in Delaware with a principal place of business in Ohio, although the pharmacy branch that compounded and shipped radiopharmaceuticals to the Raleigh Heart Clinic is located in Princeton, West Virginia. The West Virginia DHHR is located in West Virginia. More than 90% of the Plaintiffs are West Virginia residents, and all received the medical care at issue in West Virginia.

Prior to filing these cases, Attorney Stephen New filed a class action complaint, styled Dennis Norman v. Raleigh Heart Clinic et al., asserting similar claims. Cardinal Health removed that case to federal court on September 27, 2017, and the Plaintiff promptly filed a voluntary dismissal order, which the Court entered on October 30, 2017. Another related class action, styled Cathy L. Mills v. Raleigh Heart Clinic et al., asserts claims on behalf of Raleigh Heart Clinic patients who allege that they suffered distress as a result of the potential exposure to blood-borne pathogens, but do not allege that they became infected with any such ailments as a result of their stress tests. That case was filed by attorneys not involved in the instant cases, and it remained pending in the Circuit Court of Raleigh County as of the time the motions for remand were briefed.

These cases[3] were consolidated for discovery purposes in the Circuit Court of Raleigh County, on an unopposed Defense motion. The consolidation order noted some facts and legal issues that would be common among all the cases, and found that consolidation for discovery purposes only would promote efficient resolution and reduce the burden on parties, the court, and witnesses. Attorney Ben Salango, representing the Plaintiffs in six cases, filed a motion to refer the consolidated cases to the West Virginia Mass Litigation Panel (MLP).[4] The remaining Plaintiffs' attorneys involved in this matter signed on to that motion. The motion suggests that "through consolidated discovery, all of the cases would likely move more quickly toward resolution and trial." (MLP Mot. at 2, att'd as Def.'s Ex. 7) (Document 12-7 in 5:18-cv-100.) The motion lists the fourteen cases that were pending at the time it was filed, along with four additional forthcoming cases. It sought "referral to the Mass Litigation Panel, especially for discovery purposes," and emphasized the uneven progress of discovery in the pending cases. (*Id.* at 3.) The motion also argued that referral "will facilitate in the development and implementation of the case management and trial methodology necessary to fairly and expeditiously dispose of these common issues of fact and law." (*Id.* at 5.)

Cardinal Health removed these cases as a mass action under the Class Action Fairness Act (CAFA). Each Plaintiff has filed a motion to remand, relying on similar legal arguments. Cardinal Health has filed similar responses in every case, and the Plaintiffs have all filed replies. The motions to remand are therefore ripe for ruling.

---

3 At the time Judge H.L. Kirkpatrick, III, to whom the cases were assigned in state court, considered the order granting the motion to consolidate, there were seventy-two (72) cases pending. The consolidation order directed that similar future cases be consolidated as well. That order was entered around the same time, and in some cases shortly after, Cardinal Health removed cases to federal court.
4 It appears that the motion was filed in W.B. v. Raleigh Heart Clinic, docketed as 5:18-cv-100 in this Court.

4

## STANDARD OF REVIEW

The Class Action Fairness Act (CAFA) provides for federal jurisdiction in civil class action cases with an amount in controversy over $5,000,000, at least 100 class members, and diversity between at least one plaintiff and at least one defendant. 28 U.S.C. § 1332(d). A defendant's notice of removal is held to the same pleading standards as a complaint, and need not supply supporting evidence. "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547, 553 (2014). After a defendant's jurisdictional allegations have been challenged, "both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Id.* at 553-54. Contrary to the standard for removal and remand in diversity cases, "no antiremoval presumption attends cases invoking CAFA." *Id.* at 554. However, "as the party seeking removal, [the defendant] bears the burden of establishing federal jurisdiction." *Lanham v. Nationstar Mortg., LLC*, 169 F. Supp. 3d 658, 660 (S.D.W. Va. 2016) (Johnston, J.)

## DISCUSSION

The Plaintiffs argue that these cases cannot properly be classified as a "mass action" removable under CAFA because they were not consolidated in state court, the Plaintiffs did not propose that the cases be tried jointly, and the cases arose out of an event or occurrence within West Virginia. They further argue that even if the Court finds that the cases constitute a mass action, exceptions to federal jurisdiction under CAFA apply. Specifically, they assert that the "home state" exception applies because more than two-thirds of the Plaintiffs are West Virginia

residents and Raleigh Heart Clinic and Dr. Barghouthi, as the primary Defendants, are West Virginia residents. In addition, they assert that the "local controversy" exception applies because more than two-thirds of the Plaintiffs are West Virginia residents, significant relief is sought from the West Virginia Defendants, and the principal injuries occurred in West Virginia.

Cardinal Health argues that these actions do constitute a mass action because they are a "class action in disguise." (Def.'s Resp. at 9) (Document 100-12) (quoting from legislative history regarding CAFA.) It asserts that the Plaintiffs' request to transfer the cases to the MLP is sufficient to satisfy the requirement that the matter include 100 or more claims proposed to be tried jointly. Cardinal Health also argues that these cases did not arise from an 'event of occurrence' within West Virginia because that provision applies to a single happening, while the allegations here involve many transactions between Cardinal Health and Raleigh Heart Clinic and many separate patient visits. Finally, Cardinal Health argues that no exceptions to federal jurisdiction for class or mass actions apply, because the allegations against Cardinal Health make it a primary Defendant, it is not a West Virginia citizen, and because other class actions with similar allegations were filed within the last three years.

It is undisputed that the number of Plaintiffs and claims, the monetary amount in controversy, and the minimal diversity requirements under the CAFA have been established. It is also undisputed that these cases involve common questions of fact and law. The CAFA provides that "a mass action shall be deemed to be a class action removable" if it otherwise meets the CAFA criteria. 28 U.S.C. § 1332(d)(11)(A). A "mass action" is defined as "any civil action…in which monetary relief claims of 100 or more persons are proposed to be tried jointly

on the ground that the plaintiffs' claims involve common questions of law or fact…." *Id.* at §

1332(d)(11)(B)(i). However, a mass action does not include cases in which:

> (I) all of the claims in the action arise from an event or occurrence
> in the State in which the action was filed, and that allegedly resulted
> in injuries in that State or in States contiguous to that State;
> (II) the claims are joined upon motion of a defendant;
> (III) all of the claims in the action are asserted on behalf of the
> general public (and not on behalf of individual claimants or
> members of a purported class) pursuant to a State statute specifically
> authorizing such action; or
> (IV) the claims have been consolidated or coordinated solely for
> pretrial proceedings.

*Id.* at § 1332(d)(11)(B)(ii).

Here, the issues center on whether these claims are "proposed to be tried jointly," and

whether the claims arise from "an event or occurrence in the State in which the action was filed."

The Fourth Circuit does not appear to have addressed either provision. Because the Court finds

that the claims are not proposed to be tried jointly, the Court will not reach the remaining issues,

which involve unresolved legal questions. *Compare, e.g., Abraham v. St. Croix Renaissance

Group, L.L.L.P.*, 719 F.3d 270 (3rd Cir. 2013) (holding that the phrase 'an event or occurrence'

may include a common condition that persists for a period of time) *with Allen v. Boeing Co.*, F.3d

625 (9th Cir. 2015) (holding that 'an event or occurrence' refers to a "single happening").

Several courts have considered whether claims were proposed to be tried jointly for

purposes of CAFA jurisdiction under various specific factual scenarios. The Tenth Circuit

rejected an argument that eleven related actions, involving 650 plaintiffs, were proposed to be tried

jointly because the plaintiffs chose to file all of the complaints in the same court where common

questions of fact and law would be resolved jointly. *Parson v. Johnson & Johnson*, 749 F.3d 879,

888 (10th Cir. 2014) (emphasizing that "Congress excluded from the definition of a 'mass action'

claims consolidated merely for pretrial proceedings," to show that "Congress clearly contemplated situations in which the claims of 100 or more persons *would* be filed and consolidated for pretrial purposes only—likely within the same court—without coming within the definition of a 'mass action'") (emphasis in original).   The Ninth Circuit held that the plaintiffs' petition to join an existing state consolidated proceeding[5] "was not a proposal *for a joint trial*" because the consolidated proceeding they sought to join was consolidated only for pretrial proceedings. *Briggs v. Merck Sharp & Dohme*, 796 F.3d 1038, 1051 (9th Cir. 2015) (emphasis in original). The Eleventh Circuit held "that plaintiffs have the ability to avoid § 1332(d)(11)(B)(i) jurisdiction by filing separate complaints naming less than 100 plaintiffs and by not moving for or otherwise proposing joint trial in the state court."   *Scimone v. Carnival Corp.*, 720 F.3d 876, 884 (11th Cir. 2013).   *Scimone* involved a cruise ship accident.   A complaint with thirty-nine plaintiffs was pending, and those plaintiffs voluntarily dismissed the complaint when sixty-five other passengers sought to join the suit.   They then filed two separate complaints, one with forty-eight plaintiffs and one with fifty-six plaintiffs.   The Eleventh Circuit concluded that the plaintiffs, "as the masters of the complaint, could choose (as they obviously did) a state forum rather than a federal one so long as they were willing to undergo the inconvenience of two separate trials."   *Scimone v. Carnival Corp.*, 720 F.3d 876, 882 (11th Cir. 2013).

Cardinal Health relies on the Plaintiffs' motion to refer the cases to the West Virginia MLP. Upon careful review of that motion, the Court finds that the Plaintiffs did not seek a consolidated trial.   The motion notes that the parties' agreement that "through consolidated discovery, all of the cases would likely move more quickly toward resolution and trial."   (MLP Mot. at 1.)   It

---

5 A group of cases had been consolidated in a Judicial Council Coordinated Proceeding in California, which appears to be similar to the MLP in West Virginia.

noted inconsistent discovery in the then-pending cases. The motion states that "[t]he *Raleigh Heart Clinic* cases would benefit from a referral to the Mass Litigation Panel, especially for discovery purposes, to move quickly towards resolution…." (*Id.* at 4.) It emphasizes that referral to the MLP "would eliminate duplicative discovery and would allow for the development of a unified plan of discovery." (*Id.*) The motion asserts the "the convenience of the parties, counsel, and the judicial system would be best served by the centralization and unified pre-trial management accomplished by consolidation of these cases and referral to the Mass Litigation Panel." (*Id.* at 5.) It argues that referral "will facilitate in the development and implementation of the case management and trial methodology necessary to fairly and expeditiously dispose of these common issues of fact and law, and hence this litigation." (*Id.*)

Nowhere in the motion do the Plaintiffs[6] propose that the cases be consolidated for trial. They sought a unified plan of discovery, unified pre-trial management, and implantation of "trial methodology" that would foster expeditious resolution. This conclusion is further supported by the consolidation order entered by Judge Kirkpatrick later in the case. That order granted a Defense motion, which the Plaintiffs did not oppose, and consolidated the cases for discovery purposes only. Thus, it appears that it was understood in state court, around the time Cardinal Health removed these actions, that the parties were in agreement that the cases should be consolidated *for discovery*.[7] Because the Plaintiffs did not propose consolidation for trial and

---

6 Although the motion was filed in only one case, and prior to the filing of the majority of the claims, it was signed by all of the current Plaintiffs' counsel involved in these cases. Because the Court concludes that the motion did not seek a joint trial, it is unnecessary to consider whether a motion filed before one hundred plaintiffs were involved in the matter, and without the express consent, agreement, or joinder of all plaintiffs, satisfies the terms of 28 U.S.C. § 1332(d)(11)(B)(i).

7 The Court also notes that complete consolidation at this point in the litigation may be complicated by the fact-specific motions to dismiss filed by Raleigh Heart Clinic and Dr. Barghouthi in certain cases, and the presence of the WV DHHR as a Defendant in some cases, with pending motions to dismiss.

given the clear language of §28 USC 1332 (d)(11)(B)(ii)(IV), the Court finds that this matter does not constitute a mass action and the Court lacks jurisdiction. Therefore, the motions to remand should be granted.

## ATTORNEY FEES

The Plaintiffs seek an award of attorneys' fees and costs related to the motion to remand, arguing that Cardinal Health's removal is objectively unreasonable. Cardinal Health asserts that it had a good-faith basis for removal.

The United States Supreme Court has held that "absent unusual circumstances, attorney's fees should not be awarded when the removing party has an objectively reasonable basis for removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 136 (2005). The Court went on to explain:

> The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied.

*Id.* at 140.

Although the Court has concluded that these cases are not a mass action because there was no proposal that they be tried jointly, the Court finds that removal was not objectively unreasonable under the facts presented. Further, there is no reason to believe removal was intended to prolong the litigation or impose unnecessary costs. Accordingly, the Court finds that an award of fees is not appropriate.

**CONCLUSION**

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the Plaintiffs' motions to remand filed in the above-styled cases be **GRANTED** as to remand and **DENIED** as to the request for attorneys' fees, and that these cases be **REMANDED** to the Circuit Court of Raleigh County, West Virginia, for further proceedings. The Court further **ORDERS** that any motions pending in the above-styled cases be **TERMINATED AS MOOT**.

The Court **DIRECTS** the Clerk to send a certified copy of this Order to the Clerk of the Circuit Court of Raleigh County, West Virginia, to counsel of record and to any unrepresented party.

ENTER:    April 2, 2018

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA